IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

| | |
|---|---|
| BANNUM, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Fed. Cl. No. |

DECLARATION OF JOHN D. RICH

1. I, John D. Rich, am and have been the President of Bannum, Inc. ("Bannum") at all relevant times. All of the statements herein are based on my personal knowledge or information gained from direct discussions with Bannum, former Keeton Corrections, Inc. (Keeton") and Federal Bureau of Prisons' ("BOP") employees. I wrote the letters to the Federal Bureau of Prisons ("BOP") in response to Callie Farr's allegations regarding Bannum's incumbent performance on the Orlando contract and attest that they are accurate.

2. Recently, I was contacted by Charles Hurley, who formerly worked for Keeton Corrections, Inc. at its Ocala, Florida CCC facility. Mr. Hurley told me that all of the inmates from Bannum's Orlando facility had been transferred there but that Keeton did not have adequate space for these inmates. He said that when the transfers were made, he told the BOP that they did not have adequate space for the 60 or more inmates that were transferred and that the facility was only properly rated to house up to 20 inmates. As a result, many inmates had to be given weekend passes which allowed them to go for up to 3 days to a specific address that the contractor must first visit and approve prior to the

issuance of the pass. I assumed that until these passes were cleared and processed, the inmates had to sleep somewhere other than the beds they had, perhaps on the floor or worse at an unapproved, unsupervised pass site in the community. Mr. Hurley said this transfer sent the facility into chaos and they had inadequate staff to handle the transfer. Since there no space after the 3-day period passed, the Community Corrections Manager advised him to keep renewing the 3-day passes in violation of Community Corrections Center regulations and the contract.

3. Unless immediate injunctive relief is granted that will prevent the current awardee, Dismas Charities, Inc. from starting performance under the contract under protest, Bannum will lose substantial anticipated profits, impair its ability to rehire any key personnel still available who were to be assigned to work on this Contract.

4. Further, Bannum's entire business is performing CCC services for the BOP and Bannum intends to compete for a number of contracts in the Southeastern region of the Bureau of Prisons. Unless something is done to stop Orlando, Florida BOP personnel from taking retaliatory actions against Bannum, Bannum's future opportunities in this Region will be severely damaged.

5. If injunctive relief is not granted, the BOP will be unlikely to willingly change contractors in mid-stream because of the waste involved. This would prejudice Bannum in the requested discussions and re-evaluation of final proposal revisions. Thus, Bannum would lose at least its profits for that portion of the work begun, will be at an unfair disadvantage in any re-evaluation, will lose future opportunities and would have greater difficulty performing if its key personnel were unavailable.

6. I strongly believe that Bannum was not treated fairly and not according to the government contract law in this competition.

I swear under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

John D. Rich
President, Bannum,. Inc.

October 31, 2006