IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**BID PROTEST**

| | | |
|---|---|---|
| BANNUM, INC., | ) | |
| Plaintiff, | ) | No. 06-744C |
| v. | ) | (Judge Allegra) |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| And | ) | **Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order** |
| DISMAS CHARITIES, INC. | ) | |
| Defendant-Intervenor | ) | (Confidential Information Redacted) |

**DEFENDANT'S MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

MARK T. PITTMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 305-3087
Fax: (202) 307-0972

Of Counsel:
TRACEY L. PRINTER
Assistant General Counsel
Federal Bureau of Prisons
320 First St. NW, Suite 900
Washington, DC 20524

December 12, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

DEFENDANT'S BRIEF . . . . . 2

STATEMENT OF THE ISSUE . . . . . 2

STATEMENT OF THE CASE . . . . . 2

I. Nature of the Case . . . . . 2

II. Remedial Action . . . . . 4

ARGUMENT . . . . . 6

I. Standard Of Review . . . . . 9

A. Many Of The Requests For Relief Of Bannum Have Been Rendered Moot . . . . . 9

B. Bannum's Request For A Declaratory Judgment That Dismas Be Eliminated From The Competition And BOP Should Consider Bannum's Revised Proposal Is Premature And Improper . . . . . 8

1. Bannum's Request For A Declaratory Judgment Eliminating Dismas From The Competition . . . . . 11

2. Bannum's Request For A Declaratory Judgment That Further Discussions With BOP Be [ ] . . . . . 12

3. Bannum Requests An Improper Advisory Opinion . . . . . 14

C. The Remaining Requests For Relief Of Bannum Are Both Premature And Fail To State Claims Upon Which Relief Can Be Granted . . . . . 16

1. The Request For A "Bridge" Contract Award . . . . . 16

2. The Request For Costs And Attorneys' Fees . . . . . 19

3. The Request For Bid Proposal And Preparation Costs . . . . . 20

CONCLUSION . . . . . 21

## TABLE OF AUTHORITIES

CASES AND ADMINISTRATIVE DECISIONS

PAGE(S)

Advanced Data Concepts, Inc. v. United States,
216 F.3d 1054 (Fed. Cir. 2000) . . . . . . . . . . 6

Arrowhead Metals, Ltd. v. United States,
8 Cl. Ct. 703 (1985) . . . . . . . . . . 7, 18

Baird Corp. v. United States,
1 Cl. Ct. 662 (1983) . . . . . . . . . . 6,7

Bannum v. United States,
56 Fed. Cl. 453 (2003) . . . . . . . . . . 18

Bannum v. United States,
404 F.3d 1346 (Fed. Cir. 2005) . . . . . . . . . . 3

Brickwood Contractors, Inc. v. United States,
288 F.3d 1371 (Fed. Cir. 2002) . . . . . . . . . . 20

CACI Field Serv., Inc. v. United States,
13 Cl. Ct. 718 (1987), aff'd, 854 F.2d 464
(Fed. Cir. 1988) (table) . . . . . . . . . . 6,7

CCL Service Corp. v. United States,
43 Fed. Cl. 680 (1999) . . . . . . . . . . passim

Contract Custom Drapery Serv., Inc. v. United States,
6 Cl. Ct. 811 (1984), aff'd, 785
F.2d 321 (Fed. Cir. 1985) (table) . . . . . . . . . . 18

D & M Gen. Contracting, Inc.,
B-252282, 1993 WL 325094 (Comp. Gen. 1993) . . . . . . . . . . 12

Deakins v. Monaghan,
484 U.S. 193 (1988) . . . . . . . . . . 10

Delta Data Sys. Corp. v. Webster,
744 F.2d 197 (D.C. Cir.1984) . . . . . . . . . . 18

DGS Contract Serv., Inc. v. United States,
43 Fed. Cl. 227, 238 (1999) ........ 7,8

Durable Metals Prods., Inc. v. United States,
27 Fed.Cl. 472, aff'd,
11 F.3d 1071 (Fed. Cir. 1993) (table) ........ 18

Federal Sec. Sys., Inc.,
B-281745.2, 99-1 CPD ¶ 1999 WL 292729 (Comp. Gen. 1999) ........ 5

Harris Systems Int'l v. United States,
5 Cl. Ct. 253 (1984) ........ 17

Hydro Eng'g, Inc. v. United States,
37 Fed. Cl. 448 (1997) ........ 18

IMS Servs., Inc. v. United States,
33 Fed. Cl. 167 (1995) ........ 6

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ........ 6

John C. Grimberg Co. v. United States,
185 F.3d 1297 (Fed. Cir. 1999) ........ 6

Keene Corp. v. United States,
584 F. Supp. 1394 (D. Del. 1984) ........ 7

Kinnett Diaries, Inc. v. Farrow,
580 F.2d 1260 (5th Cir. 1978) ........ 7

LABAT-Anderson, Inc. v. United States,
65 Fed. Cl. 570 (2005) ........ 14, 15

Lion Raisins, Inc. v. United States,
69 Fed. Cl. 32 (2005) ........ 20

Mantech Telecommunications and Information Sys. Corp. v. United States,
49 Fed. Cl. 57 (2001), aff'd, 30 Fed. Appx. 995, 2002 WL 418169
(Fed. Cir. 2002) (table) ........ passim

McCahill v. Borough of Fox Chapel,
438 F.2d 213 (3rd Cir. 1971) ........ 14

McNeil v. United States,
508 U.S. 106 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Melkonyan v. Sullivan,
501 U.S. 89 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Miller-Holzwarth, Inc. v. United States,
42 Fed. Cl. 643 (1999), aff'd, 232 F.3d 905 (Fed. Cir. 2000) (table) . . . . . . . . . . . . . . . . 6

Morris v. United States,
33 Fed. Cl. 733 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Morris v. United States,
39 Fed. Cl. 7 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NFK Eng'g, Inc. v. United States,
805 F.2d 372 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

National Air Traffic Controllers Assoc. v. United States,
160 F.3d 714 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

National Forge Co. v. United States,
779 F.2d 665 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Northrop Corp., Northrop Elcs. Sys Div. v. United States,
27 Fed. Cl. 795 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PRC, Inc. v. Widnall,
64 F.3d 644 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PGBA, LLC v. United States,
389 F.3d 1219 (Fed. Cir. 2004) ........................................................................15

Parcel 49C Ltd. P'Ship v. United States,
31 F.3d 1147 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

Prineville Sawmill Co., Inc. v. United States,
859 F.2d 905 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

RADVA Corp. v. United States,
17 Cl. Ct. 812 (1989), aff'd, 914 F.2d 271 (Fed. Cir.
1990) (table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rice Servs., Ltd. v. United States,
405 F.3d 1017 (Fed. Cir. 2005) . . . . . 20

SMS Data Prods. Group, Inc.,
99-1 CPD ¶ 1999 WL 40943 (Comp. Gen.1999) . . . . . 5

SMS Data Prod. Group, Inc. v. Austin,
940 F.2d 1514 (Fed. Cir. 1991) . . . . . 11

Scanwell Lab., Incl. v. Shaffer,
424 F.2d 859 (D.C. Cir. 1970) . . . . . 18

Sea-Land Service, Inc. v. Brown,
600 F.2d 429 (3d Cir. 1979) . . . . . 18

SKJ & Assoc., Inc. v. United States, 67 Fed. Cl. 218 (2005) . . . . . 21

Southfork Sys., Inc. v. United States,
141 F.3d 1124 (Fed. Cir. 1998) . . . . . 6

T&M Distributors, Inc. v. United States,
185 F.3d 1279 (Fed. Cir. 1999) . . . . . 8

Torncello v. United States,
681 F.2d 756, 231 Ct. 20 (1982) . . . . . 8

United Int'l Investig. Servs., Inc. v. United States,
41 Fed. Cl. 312 . . . . . 18

United States v. John C. Grimier Co.,
702 F.2d 1362 (Fed. Cir. 1983) . . . . . 14

## STATUTES AND REGULATIONS

5 U.S.C. § 706(2) . . . . . 6

28 U.S.C. § 1491(b) . . . . . 13

28 U.S.C. § 1491(b)(1) . . . . . 6

28 U.S.C. § 2412(d)(1)(B) . . . . . 18

28 U.S.C. § 2412 . . . . . 18

48 C.F.R. § 15.306(c)(4)(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

40 C.F.R. § 15.306(d)(2)(3)........................................................................................................8

MISCELLANEOUS

Charles Alan Wright, et al., Fed. Prac. & Proc. § 2757 (West 2004)..........................................15

Charles Alan Wright, et al., Fed. Prac. & Proc. § 2757 (West 2004) ..........................................15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**BID PROTEST**

| | | |
|---|---|---|
| BANNUM, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-744C |
| | ) | (Judge Allegra) |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| And | ) | **Protected Information to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order** |
| DISMAS CHARITIES, INC. | ) | |
| Defendant-Intervenor | ) | (Confidential Information Redacted) |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Rules of this Court ("RCFC"), defendant, the United States, respectfully requests that this Court dismiss the complaint filed by plaintiff, Bannum, Inc., ("Bannum") because its challenges to the actions of the United States Department of Justice, Bureau of Prisons ("BOP"), have been rendered moot and/or premature. Specifically, BOP has taken voluntary corrective action to reevaluate the proposals, which will include conducting discussions with all offerors regarding the procurement of the contract at issue, thus mooting Bannum's bid protest. Further, Bannum's request for a directed award of the contract while discussions are being held fails to state a claim upon which relief may be granted. Should the Court deny our motion to dismiss, we respectfully request an enlargement of seven days from the date of the denial to file our cross-motion for judgment upon the administrative record. In support of this motion, we rely upon the following brief:

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUE

Whether the complaint filed by Bannum should be dismissed because it is moot, premature, or fails to state a claim upon which relief may be granted.

## STATEMENT OF THE CASE

### I. Nature Of The Case

On November 1, 2006, Bannum filed a post-award bid protest action in this Court seeking to enjoin BOP's award a contract, without discussions and based upon initial proposals, to defendant-intervenor, Dismas Charities, Inc. ("Dismas"). The contract was part of a "best value" procurement conducted pursuant to request for proposal ("RFP") No. 200-0880-SE for the provision of community corrections center services ("CCC") for federal criminal offenders in Orlando, Florida. Bannum alleges numerous errors with respect to BOP's decision to award the contract to Dismas without conducting discussions. See Complaint for Preliminary Injunctive Relief and Declaratory Judgment Relief, dated November 1, 2006 ("Compl.").

Bannum seeks the following relief: (1) a preliminary and permanent injunction enjoining performance of the contract until discussions are held with all offerors and a receipt by BOP of any revised proposals; (2) a permanent injunction "precluding anyone but Bannum from performing the contract" until discussions are held with all offerors; (3) a declaratory judgment finding: (a) the award to Dismas without discusions was arbitrary and capricious and in violation of law, (b) Dismas should be eliminated from the competition for failing to disclose material risks in its initial offer, (c) discussions should be conducted with all responsible offerors, including Bannum [ ]; (4) the award of

Bannum's costs and attorneys' fees; and (5) the award of Bannum's bid preparation costs. Compl. at "Request for Relief," pp. 18- 19.

After Bannum filed its bid protest, BOP reviewed its procurement decision and has initiated voluntary corrective action. Specifically, after reviewing a new argument presented by Bannum in its motion for judgment upon the agency record[1] filed on November 29, 2006, BOP has issued a stop-work order on the contract and has determined that it is necessary to conduct discussions with all offerors.

The RFP provided, among other things, that: "The Government intends to evaluate proposals and award a contract **without** discussions with offerors . . . . Therefore, the offeror's initial proposal should contain the offeror's best terms from a cost or price and technical/management standpoint." Administrative Record ("AR") 136 at Section L.2(f)(4) (emphasis added). The RFP goes on to state: "The Government reserves the right to conduct discussions if the Contracting Officer later determines them to be necessary." Id. Further, the RFP provides that: "The Bureau of Prisons may award a contract based on the initial submittal of offers, therefore, offerors shall consider each proposal as a final proposal revision offer unless otherwise instructed by the Contracting Officer." AR 139 at Section L.7(f).

[1]Bannum's motion appears to be erroneously styled as a "motion for summary judgment on the administrative record," rather than a motion for judgment upon the agency record. Summary judgment standards are not appropriate to the Court's judicial review upon the administrative record in a bid protest. See RCFC 52.1, comm. n.; Bannum v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005). Further, in addition to its motion, Bannum has separately filed a "statement of facts" in contravention of RCFC 52.1(b), which provides that the motion for judgment upon the agency record "shall include a Statement of Fasts that draws upon . . . the administrative record." RCFC 52.1

In addition, the Federal Acquisition Regulations ("FAR") provide that the contracting agency may make an award without discussions when an offeror has provided all requested information and the offeror's bid has no deficiencies or significant weaknesses requiring discussions. 48 C.F.R. § 15.306(c)(4)(d)(3). In the event that all offers being considered for an award have "deficiencies" or "significant weaknesses," the contracting officer is required to hold discussions with each "offeror still being considered for the award." Id.

Here, the RFP contemplated that the offerors submit a "detailed Critical Path Method Diagram" with their proposals. AR 123. Although in making the award to Dismas, BOP determined that Dismas's bid had no deficiencies or significant weaknesses, the administrative record is ambiguous as to whether Dismas, or any of the other offerors, provided an appropriate critical path diagram. Therefore, because Dismas may have had a deficiency, discussions with all offerors might have been necessary before the award was made.

In its motion for judgment upon the agency record, Bannum requests that this Court "remand this case to the BOP for issuance of discussions based on the offerors' proposals." Pl.'s Mot. at 32. The corrective action proposed by BOP will accomplish Bannum's requested relief. Therefore, Bannum's bid protest is moot and its complaint should be dismissed.

## II. Remedial Action

While this action was pending, BOP determined that voluntary remedial action – consisting of stopping work on the contact and conducting discussions with all offerors – was appropriate. See Letter, dated December 11, 2006 (attached as Exh. A); Stop Work Order Notice, dated December 11, 2006 (attached as Exh. B).

On December 11, 2006, in furtherance of the remedial action, BOP unilaterally issued notices to all offerors on the contract – Bannum, Dismas, [ ] [ ] – describing the remedial action. See Exh. A. Moreover, BOP issued a stop work order on the contact to Dismas so that discussions could be conducted with all offerors. See Exh. B.

Importantly, in undertaking the described voluntary remedial action, which moots Bannum's complaint, the Government in no way admits nor concedes the validity of any of the allegations, factual assertions, or alleged errors contained in Bannum's various pleadings. This Court has recognized that the Government's proposed remedial action does not amount to an admission of impropriety. See Mantech Telecommunications and Information Sys. Corp. v. United States, 49 Fed. Cl. 57, 72 (2001) ("it is important to recall that the government is not obliged to admit an error as a precondition to proposing corrective action"), aff'd, 30 Fed. Appx. 995, 2002 WL 418169 (Fed. Cir. 2002) (table); CCL Service Corp. v. United States, 43 Fed. Cl. 680, 692 (1999); see also SMS Data Prods. Group, Inc., 99-1 CPD ¶ 26, at 3, 1999 WL 40943 (Comp. Gen.1999) ("It is not necessary for an agency to conclude that the protest is certain to be sustained before it may take corrective action; where the agency has reasonable concern that there were errors in the procurement, even if the protest could be denied, we view it as within the agency's discretion to take corrective action."); Federal Sec. Sys., Inc., B-281745.2, 99-1 CPD ¶ 86, at 4-5, 1999 WL 292729 (Comp. Gen. 1999) (same).

# ARGUMENT

## I. Standard Of Review

The Court's jurisdiction to entertain post-award bid protest actions is supplied by the Tucker Act, 28 U.S.C. § 1491(b)(1). The scope of review of procurement actions is "extremely limited." RADVA Corp. v. United States, 17 Cl. Ct. 812, 818 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990) (table) (quoting CACI Field Serv., Inc. v. United States, 13 Cl. Ct. 718, 725 (1987), aff'd, 854 F.2d 464 (Fed. Cir. 1988) (table)); accord Prineville Sawmill Co., Inc. v. United States, 859 F.2d 905, 909 (Fed. Cir. 1988); NFK Eng'g, Inc. v. United States, 805 F.2d 372, 376 (Fed. Cir. 1986).

The standard of review is prescribed in the Administrative Procedure Act, which authorizes a court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000); John C. Grimberg Co. v. United States, 185 F.3d 1297, 1299 (Fed. Cir. 1999); Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1132 (Fed. Cir. 1998); Miller-Holzwarth, Inc. v. United States, 42 Fed. Cl. 643, 649 (1999), aff'd, 232 F.3d 905 (Fed. Cir. 2000) (table). The aggrieved party has the burden to demonstrate that a procurement action should be set aside because either: (1) the procurement officer's decision lacked a rational basis; or (2) the procurement procedure involved a prejudicial violation of regulation or procedure. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001).

It is well-settled that the Court may not substitute its judgment for that of the agency. See IMS Servs., Inc. v. United States, 33 Fed. Cl. 167, 179 (1995); see also Baird Corp. v. United

States, 1 Cl. Ct. 662, 664 (1983) ("The Court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable."); accord Prineville, 859 F.2d at 909; National Forge Co. v. United States, 779 F.2d 665, 667 (Fed. Cir. 1985); CACI Field Serv., 13 Cl. Ct. at 725; Arrowhead Metals, Ltd. v. United States, 8 Cl. Ct. 703, 711 (1985).

Further, "[c]ontracting officers may properly exercise wide discretion in their evaluation of bids and in their application of procurement regulations." CACI Field Serv., 13 Cl. Ct. at 725; accord NKF Eng'g, 805 F.2d at 377 n.7. "While contracting officers may not act illegally, they are entitled to exercise discretion upon a broad range of issues confronting them, including 'consideration of price, judgment, skill, ability, capacity, and integrity' in the solicitation of business with whom the [G]overnment will enter into contracts." Keene Corp. v. United States, 584 F. Supp. 1394, 1401 (D. Del. 1984) (quoting Kinnett Diaries, Inc. v. Farrow, 580 F.2d 1260, 1277 (5th Cir. 1978)).

The question before the Court is not whether a contracting officer's decision was right or wrong; instead, the "Court must determine whether or not the contracting officer's decision was 'the result of a considered process, rather than an arbitrary and capricious choice based on factors lacking any intrinsic rational basis or relationship to the questions at issue.'" Keene Corp., 584 F. Supp. at 1401 (quoting Kinnett Diaries, Inc., 580 F.2d at 1277).

In negotiated procurements, contracting officers "have broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." Mantech, 49 Fed. Cl. at 65 (quoting DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227, 238 (1999)). Both "this Court and the Comptroller General have indicated that they

will not object to an agency's proposed corrective action provided it is 'reasonable under the circumstances,' DGS Contract Serv., Inc., 43 Fed. Cl. at 238, and 'appropriate to remedy the impropriety,' Rockville Mailing Serv., Inc., 96-1 CPD ¶ 184, at 3." Mantech, 49 Fed. Cl. at 65.

Further, this Court must assume that BOP will carry out the remedial action in good faith. See T&M Distributors, Inc. v. United States, 185 F.3d 1279, 1285 (Fed. Cir. 1999) ("[G]overnment officials are presumed to act in good faith, and 'it requires "well-nigh irrefragable proof" to induce a court to abandon the presumption of good faith.'") (citing Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298, 1301-02 (1976), cert. denied, 434 U.S. 830 (1977)). To overcome the presumption of good faith, a plaintiff must "present 'clear and strong proof of specific acts of bad faith,' demonstrating that a Government official acted with malice or a specific intent to injure the plaintiff." Morris v. United States, 39 Fed. Cl. 7, 15 (1997) (quoting Morris v. United States, 33 Fed. Cl. 733, 752 (1995) (citing Torncello v. United States, 681 F.2d 756, 771, 231 Ct. Cl. 20 (1982)).

Neither Bannum nor Dismas have alleged, nor can they demonstrate, bad faith in BOP's remedial action plan. Indeed, as this Court recognized under similar circumstances, BOP's decision to stop work on the contract and conduct discussions "has the potential of benefitting [all] offerors and, thus, do[es] not constitute conduct that favors one offeror over another with all offerors, but rather seeks to 'enhance materially the proposal[s]' potential for award' and thereby, maximize the Government's ability to obtain best value." Mantech, 49 Fed. Cl. at 77 (quoting 40 C.F.R. § 15.306(d)(2)(3)).

After discussions are conducted with all offerors, if the Government determines that Dismas's proposal continues to represent the best value to the Government, it will merely

withdraw the stop work order and allow Dismas to continue performing. Otherwise, if the proposals of Bannum or the other offerors, [ ], are found to be the best value to the Government, BOP will simply terminate Dismas's contract for convenience and award the contract to the proper party. In any event, BOP's the remedial action will avoid excessive costs, delays, and needless litigation expense. Thus, BOP has implemented a solution that directly addresses BOP's concerns, as well as any concerns that Bannum or Dismas may have.

## II. Bannum's Complaint Should Be Dismissed Because, In Light Of BOP's Remedial Action, Its Arguments Are Moot And/Or Premature

Bannum's decision to take remedial action renders this protest moot or premature. Further, because this Court lacks the authority to direct the award of a contract, Bannum's request that the Court enter a permanent injunction "precluding anyone but Bannum from performing the contract" until discussions are held should be dismissed for failure to state a claim upon which relief may be granted. Compl. at "Request for Relief," p. 19.

### A. Many Of The Requests For Relief Of Bannum Have Been Rendered Moot

The following requests by Bannum are moot because of BOP's remedial action stopping work on the contract and conducting discussions with all offerors:

> (1) Bannum's request for a preliminary and permanent injunction enjoining performance on the contract until discussions are held with all offerors and a receipt by BOP of any revised proposals; and
>
> (2) Bannum's request for a declaratory judgment finding: (1) the award to Dismas without discusions was arbitrary and capricious and (2) discussions should be conducted with all responsible offerors.

Compl. at "Request for Relief," pp. 18- 19; <u>see also</u> Pl.'s Mot. at 32. (requesting that this Court "remand this case to the BOP for issuance of discussions based on the offeror's proposals").

These requests for relief have all been rendered moot by BOP's (1) stopping work on the contract with Dismas pending the outcome of discussions and (2) conducting discussions with all offerors. There is no longer a controversy between the parties on these issues. Accordingly, the requests should be denied as moot. See Deakins v. Monaghan, 484 U.S. 193, 201 n.5 (1988) (no jurisdiction if case moot); CCL, 43 Fed. Cl. at 688 ("Federal Courts are permitted only to entertain matters in which there is a 'live' justiciable issue."); see also Northrop Corp., Northrop Elcs. Sys Div. v. United States, 27 Fed. Cl. 795, 800 n.4 (1993) (discussion of mootness doctrine and its application by the Court of Federal Claims).[2]

**B. Bannum's Request For A Declaratory Judgment That Dismas Be Eliminated From The Competition And BOP Should Consider Bannum's Revised Proposal Is Premature And Improper**

Bannum has also requested that the Court enter a declaratory judgment finding: (1) Dismas "should be eliminated from the competition for failing to disclose material risks in its initial offer" and (2) discussions should be with Bannum [

]. Compl. at "Request for Relief," p. 19. However, as explained in BOP's letter to the offerors, BOP intends to conduct the discussions with **all** of the offerors, rather than conducting discussions that would merely be advantageous or biased toward Bannum at the expense of the other parties. Exh. A.

---

[2] This Court's decision in Mantech is not to the contrary. Unlike this case, in Mantech, the plaintiff sought to prevent the Government from instituting corrective action, see Mantech,49 Fed. Cl. at 65.

**1. Bannum's Request For A Declaratory Judgment Eliminating Dismas From The Competition**

Bannum's request for a declaration that Dismas should be eliminated from the competition and further discussions for allegedly failing to disclose risks in its initial offer is both premature and improper. First, the discussions and re-evaluation of the bid proposals thus far has not concluded. Second, no decision can be made regarding the propriety of Dismas's bid until the discussions are completed. Accordingly, only if Dismas is found non-responsible as a consequence of the discussions can Bannum claim that it was harmed by BOP's method of re-evaluation.

Instructive on this point is this Court's decision in Mantech Telecommunications and Information Sys. Corp. v. United States, 49 Fed. Cl. 57 (2001), in which it considered the argument of a protester, Mantech, regarding whether another bidder, Lockheed Martin, should be eliminated from discussions taken as a corrective action by the Army to clarify contract price requirements. Id. at 70-73. Like Bannum, Mantech argued that Lockheed Martin's cost proposal did not comply with the Army's solicitation because it failed to include all necessary information and it should therefore be eliminated from the competition and subsequent discussions. Id. at 70-71. Assuming for the sake of argument that Lockheed Martin's proposal did not conform to the Army's solicitation, this Court nonetheless rejected Mantech's contention holding that "where, in a negotiated procurement, an offeror's proposal does not comply with the solicitation's requirements, 'an agency is not required to eliminate the awardee from the competition, but may permit it to correct its proposal.'" Id. at 71 (citing SMS Data Products Group, Inc. v. Austin, 940

F.2d 1514, 1517 (Fed. Cir. 1991); D & M Gen. Contracting, Inc., B-252282, B-252282.4, 1993 WL 325094, at *2 (Comp. Gen. 1993)). The Court continued:

> To be sure, Lockheed Martin's failure to comply with Solicitation would preclude it from receiving an award as it is fundamental that a materially noncompliant proposal cannot form the basis of an award. But, contrary to ManTech's claim, such a defect does not warrant Lockheed Martin's total exclusion from the bidding, but instead may be remedied by steps designed to assist Lockheed Martin in bringing its cost proposal into conformity with the Army's requirements.

Id. at 71-72 (internal citations omitted).

Applying the Court's reasoning in Mantech to this case, if one assumes for the sake of argument that Dismas did not comply with the RFP, its failure to comply does not mandate that BOP eliminate it from the competition "but, instead, provide[s] a basis for further discussions and other steps designed to cure the identified defects." Id. at 72. Eliminating Dismas from further discussions would unfairly prejudice Dismas to the benefit of Bannum – going against the very reason Bannum claims it filed its bid protest. See id. at 72 ("Given this, had the Army, without prior warning, eliminated Lockheed Martin from the competition, as ManTech urges, its action would have been vulnerable to serious legal challenge."). Thus, Bannum's request for a declaratory judgment that Dismas be eliminated from further discussions and the competition is premature and highly improper.

**2. Bannum's Request For A Declaratory Judgment That Further Discussions With BOP Be [ ]**

Bannum's request for a declaratory judgment that further discussions with the BOP be based upon its [ ] is likewise premature and prejudical to the other offerors.

On June 23, 2006, the Contracting Officer sent notices to all the offerors, including Bannum, with Amendment No. 3 to the solicitation, regarding a new wage rate determination. AR 440. All offerors were permitted to revise their pricing only, and were specifically informed that it was not a form of written negotiations to open and conduct discussions. Id. Bannum responded with [

] argued that written negotiations had already occurred and were continuing, and threatened to protest [ ]. AR 452.

[

].

[

]. Bannum's request that discussions be commenced with all offerors is being implemented by BOP as part of its remedial action.

Bannum will have the same opportunity as the other offerors to submit proposal revisions in response to the discussions. [

] and allow Bannum to use BOP's remedial action to steer the contract in its direction. Of course, like its request that Dismas be unilaterally eliminated from the competition, forcing BOP [ ] would result in the very prejudicial behavior that Bannum alleged required it to file suit. See

Mantech, 49 Fed. Cl. at 72 ("Given this, had the Army, without prior warning, eliminated Lockheed Martin from the competition, as ManTech urges, its action would have been vulnerable to serious legal challenge."); accord CCL, 43 Fed. Cl. at 690 ("The Government is obligated to consider bids in an honest and fair manner and to adhere to the statutes and regulations governing the procurement.").

### 3. Bannum Requests An Improper Advisory Opinion

Finally, a declaratory judgment by this Court that BOP eliminate Dismas from the competition or [ ] would result in an improper advisory opinion. Indeed, until the discussions are held, Bannum's request for declaratory relief along these lines is nothing more than an "academic exercise." See LABAT-Anderson, Inc. v. United States, 65 Fed. Cl. 570, 575 (2005) (refusing bid protestor's request for declaratory judgment where it would have no practical effect and would result in a mere "academic exercise") (citations omitted).

The Government does not dispute that this Court has limited jurisdiction in bid protest actions to award declaratory relief. See 28 U.S.C. § 1491(b). However, the Court of Appeals for the Federal Circuit has reiterated that this Court's equitable powers in bid protests "should be exercised in a way [that] best limits judicial interference in contract procurement." Parcel 49C Ltd. P'Ship v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994) (quoting United States v. John C. Grimier Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983)). Importantly, the Court's ability to enter declaratory relief in bid protests is not as unrestrained as Bannum suggests.

With BOP's decision to take remedial action, there remains nothing for the Court to declare. It is undisputed that Bannum will have the opportunity to be considered as a possible

awardee of the contract after discussions have been held and all the offerors's deficiencies are addressed. At best, Bannum's request for declaratory judgment seeks an advisory opinion as to who should be considered part of the discussions and whether BOP should consider Bannum's revised offer to the disadvantage of the other offerors.

However, "[t]he oldest and most consistent thread in the federal law of justicability is that the federal courts will not give advisory opinions." Charles Alan Wright, et al., Fed. Prac. & Proc. § 2753 (West 2004). Indeed, "[a] declaratory judgment is not available as an academic exercise . . . . . " PGBA, LLC v. United States, 389 F.3d 1219, 1228 (Fed. Cir. 2004) (quoting Md. Citizens for a Representative Gen. Assembly v. Governor of Md., 429 F.2d 606, 611 (4th Cir.1970)); see also LABAT-Anderson, 65 Fed. Cl. at 575 ("We do not have authority to issue declaratory relief because in these circumstances such a judgment would be tantamount to issuing an advisory opinion.").[3]

Here, the advisory opinion requested by Bannum would serve no purpose other than to give it an unfair advantage in the subsequent discussions. However, as stated by Court of Appeals for the Federal Circuit in language applicable here,

---

[3]As one commentator on federal practice has explained:

> Just as an action for a declaratory judgment may come too soon because a dispute has not yet ripened into an actual controversy, it also may come too late. There is no longer an actual controversy, and a declaratory judgment cannot be given, if a matter has become moot. The presence of a controversy must be measured at the time the court acts. It is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy.

Charles Alan Wright, et al., Fed. Prac. & Proc. § 2757 (West 2004) (emphasis added).

> Although Congress has authorized the Court of Federal Claims to grant equitable relief in certain limited circumstances, those circumstances do not include the general authority to grant equitable relief whenever a declaratory judgment or an injunction would assist a claimant in obtaining monetary benefits in another forum.

National Air Traffic Controllers Assoc. v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998).

BOP's decision to conduct discussions and stop work on the contract has eliminated the case or controversy between Bannum and the Government. Therefore, this request for relief has been rendered premature by Dismas's remedial action, and should be dismissed. See McNeil v. United States, 508 U.S. 106, 109, 113 (1993) (premature suit must be dismissed for lack of jurisdiction even if subsequent events permit later lawsuit).

### C. The Remaining Requests For Relief Of Bannum Are Both Premature And Fail To State Claims Upon Which Relief Can Be Granted

The remaining requests for relief raised by Bannum are both premature and fail to state claims upon which relief may be granted. The remaining requests are:

> (1) Bannum's request for a permanent injunction "precluding anyone but Bannum from performing the contract" until discussions are held;
>
> (2) Bannum's request for reasonable costs and attorneys' fees; and
>
> (3) Bannum's request for bid preparation and proposal costs.

Compl. at "Request for Relief," pp. 18- 19.

These requests will be discussed in turn below.

#### 1. The Request For A "Bridge" Contract Award

In its complaint, Bannum requests a permanent injunction directing the BOP's award of a "bridge" contract to it while discussions are conducted. Such a request fails as a matter of law.

Bannum's request that discussions be commenced with all offerors is being implemented by BOP as part of its remedial action. Bannum will have the same opportunity that the other offerors will have to compete for the contract award at issue. Bannum's request for a "bridge" contract well exceeds the scope of this protest.

The prior Orlando, Florida area CCC contract (J200c-533, which was run by Bannum) expired on Sunday, July 9, 2006, after a full five year performance period, including the base period of two years and three option years. Cf. Harris Systems Int'l v. United States, 5 Cl. Ct. 253, 265 (1984) (plaintiff "certainly cannot now complain that its failure to have or be considered for the contract beyond [July 9, 2006], will result in irreparable harm."). There is no "bridge" contract in the Orlando area. Rather, all of the inmates from Bannum's facility in Orlando were moved to other contract facilities in other areas of Florida. The main reason for the transfer of inmates from Bannum's facility was that BOP was aware of a dispute between Bannum and its landlord over extension of the lease at Bannum's location. AR 2408.

Most of the inmates that were in Bannum's facility in July 2006 were transferred to an existing halfway house facility in Ocala, Florida run by [ ]. That Ocala contract (J200c-630) was awarded to [ ] on November 21, 2002. On February 16, 2006, BOP exercised option year two of that contract for services from March 1, 2006 through February 28, 2007.

Bannum is asking this Court to do something that it cannot do – to award Bannum a contract that either does not exist, or is not part of this protest and was properly awarded to [ ]. Bannum is not entitled to such relief. Here, issuance of an injunction awarding Bannum a contract, without solicitation, which is not part of this protest would not "preserve the relative positions of the parties," it would usurp BOP's considered judgment in managing its

procurement and ensuring continuation of essential CCC services. See Bannum v. United States, 56 Fed. Cl. 453, 459 (2003) ("The court does not believe that a mandatory injunction should be used to fill in gaps in business planning."). Indeed, this Court cannot order a contract award to a particular bidder because this would go beyond curing a cognizable mistake in an award to an unqualified bidder. United Int'l Investig. Servs., Inc. v. United States, 41 Fed. Cl. 312, 323-24 (1998) (citing Hydro Eng'g, Inc. v. United States, 37 Fed. Cl. 448, 461 (1997), and Scanwell Lab., Incl. v. Shaffer, 424 F.2d 859, 869 (D.C. Cir. 1970)).

In addition, it is well established that this Court does not possess jurisdiction to order the award of a contract to a particular offeror. Arrowhead Metals, 8 Cl. Ct. at 711; Contract Custom Drapery Serv., Inc. v. United States, 6 Cl. Ct. 811, 820 (1984), aff'd, 785 F.2d 321 (Fed. Cir. 1985) (table). Moreover, the ultimate grant of a contract is solely within the discretion of the contracting agency, and courts will not make contracts for the parties. Sea-Land Service, Inc. v. Brown, 600 F.2d 429, 432-33 (3d Cir. 1979); Hydro Engineering, Inc. v. United States, 37 Fed. Cl. 448, 461 (1997). As this Court succinctly stated in Mantech:

> At all events, there are serious questions as to whether this court is ever authorized to award directly a contract. This court noted in CCL, 43 Fed.Cl. at 688, that "[s]election of a contractor among the protestors and award of the contract are improper exercises of the court's authority." See also Durable Metals Prods., Inc. v. United States, 27 Fed.Cl. 472, 476 ("Moreover, the equitable jurisdiction of this court does not include the authority to award a contract as plaintiff requests."), aff'd, 11 F.3d 1071 (Fed. Cir.1993) (table). Further, in a decision that provided part of the impetus for this court's bid protest jurisdiction, the D.C. Circuit stated "[i]t is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties." Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859, 869 (D.C. Cir.1970). See also Delta Data Sys. Corp. v. Webster, 744 F.2d 197, 204 (D.C. Cir.1984) (refusing to direct award in negotiated procurement where only one offeror remained and noting that the agency had alternatives rather than

awarding to remaining offeror under the original solicitation). Cf. Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147, 1153 (Fed. Cir.1994).

Mantech, 49 Fed. Cl. at 779-80.

By requesting that the Court issue an injunction awarding a contract in its favor while discussions are being conducted, Bannum in essence seeks to avoid the completion of the discussions and re-evaluation. This is entirely inappropriate, especially considering the remedial action BOP has taken, and in light of Bannum's own request that discussions be conducted prior to the award of the contract. Accordingly, Bannum has failed to state a claim justifying such relief. See RCFC 12(b)(6).

**2. The Request For Costs And Attorney Fees**

In requesting costs and attorney fees, Bannum must rely upon the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, which waives sovereign immunity for requests for costs and fees against the United States.

EAJA provides that a party seeking an award of fees and other expenses shall, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award." 28 U.S.C. § 2412(d)(1)(B). Section 2412(d)(2)(G) defines "final judgment" as a "judgment that is final and not appealable, and includes an order of settlement." In Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991), the Supreme Court held that "the 30-day EAJA clock begins to run after the time to appeal that final judgment has expired." (emphasis added).

Consequently, to obtain EAJA costs and fees, Bannum must first obtain a final judgment, and then submit to the Court an application showing that it was a prevailing party eligible to

receive an award. Since Bannum has not obtained a final judgment, nor has it submitted EAJA applications, it cannot obtain EAJA costs and fees. Thus, any request for such costs and fees is premature.

Moreover, the requests for costs and fees fail to state claims upon which relief can be granted. Because the voluntary and unilateral remedial actions taken by BOP will have rendered all of Bannum's requests for relief moot and/or premature, Bannum would not be considered a "prevailing party" for the purposes of EAJA under settled law. See Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1026-27 (Fed. Cir. 2005) (holding the unilateral and voluntary agency remedial action prior to any court ruling that was the equivalent of a judgment on the merits or a court-ordered consent decree was insufficient to carry sufficient judicial imprimatur to render protester a "prevailing party"); Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1377 (Fed. Cir. 2002) (same). Accordingly, Bannum's request for costs and attorney fees under EAJA fail to state claims for which relief may be granted. See RCFC 12(b)(6).

### 3. The Request For Bid Proposal And Preparation Costs

Finally, Bannum's claim for bid proposal and preparation costs is premature and also fails to state a claim upon which relief may be granted. Because work has been stopped on the contract and BOP has instituted remedial action to conduct discussions with all offerors, there is no remaining foundation upon which Bannum could base a claim for bid preparation costs. See Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32, 36 (2005).

The Federal Circuit and the Court of Federal Claims have consistently held that a decision on the merits must occur before bid preparation and proposal costs can be awarded. See, e.g., PRC, Inc. v. Widnall, 64 F.3d 644, 647 (Fed. Cir. 1995) ("[A] perquisite for an award

of protest and proposal costs is a determination . . . that a challenged agency action is in violation of a statute or regulation . . . ") (internal citations omitted); CCL, 43 Fed. Cl. at 690 ("[A] decision on the merits of the award must be made prior to the award of bid preparation and proposal costs. Without analysis of the merits of the award, the court lacks a basis to grant further relieve."). BOP's decision to stop work on the contract and conduct discussions precludes a decision on the merit and prevents Bannum from seeking bid preparation and proposal costs. See SKJ & Assoc., Inc. v. United States, 67 Fed. Cl. 218, 228 (2005) ("[B]ecause the original contract and solicitation at issue here were canceled, there is no matter before the court for resolution upon which [plaintiff] can base its claim for bid preparation and proposal costs."). Stated otherwise, Bannum is not eligible for such bid preparation and proposal costs because it may be awarded the contract pursuant to the re-evaluation and discussions. Therefore, Bannum's request for bid preparation and proposal costs also fails to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that this Court grant its motion to dismiss and dismiss the Bannum's complaint. Should the Court deny our motion, we request an enlargement of seven days from the date of the denial to file our cross-motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Brian M. Simkin

BRIAN M. SIMKIN
Assistant Director

/s/ Mark T. Pittman

MARK T. PITTMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 305-3087
Fax: (202) 307-0972

Attorneys for Defendant

Of Counsel:
TRACEY L. PRINTER
Assistant General Counsel
Federal Bureau of Prisons
320 First St. NW, Suite 900
Washington, DC 20524

December 12, 2006

CERTIFICATE OF FILING

I hereby certify that on December 12, 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mark T. Pittman

Mark T. Pittman

**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH**

**UNITED STATES COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

# EXHIBIT A

(Redacted)

# EXHIBIT B

(Redacted)